[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 12, 2005
THOMAS K. KAHN
CLERK

No. 05-13817-P

IN RE:

ROBERT DALE CONKLIN,

Petitioner.

--------------------------
Application for Leave to File a Second or Successive
Habeas Corpus Petition 28 U.S.C. § 2244(b)
--------------------------
(July 12, 2005)

BEFORE: EDMONDSON, Chief Judge, BARKETT and WILSON, Circut Judges.

BY THE COURT:

Robert Dale Conklin is an inmate on Georgia's death row. On April 21, 2004, we affirmed the denial of his first petition seeking 28 U.S.C. § 2254 habeas corpus relief. *See Conklin v. Schofield*, 366 F.3d 1191 (11th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1703, 161 L.Ed.2d 531 (2005). This afternoon the Georgia Supreme Court denied Conklin's Consolidated Application for Certificate of Probable Cause to Appeal and Motion for Stay of Execution. Conklin thereafter filed in this Court an application for an order permitting the district court to consider a second habeas petition and a Motion for Stay of Execution pursuant to 28 U.S.C. § 2244(b).

We are constrained by 28 U.S.C. § 2244 to dismiss claims in a second or

successive petition for habeas corpus if the claims have been presented in a previous application. Section 2244(b)(1) permits Courts of Appeal to entertain claims that have *not* been presented in a prior application only if the applicant makes a *prima facie* showing that one of the two following requirements has been satisfied:

> (A) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*See also* 28 U.S.C. § 2244(b)(3)(C) (setting forth *prima facie* showing requirement).

Conklin makes several new claims in his application, all based on the "new evidence" exception to the bar against successive habeas petitions. These claims can be broken down into two groups: First Conklin claims that new evidence shows that no reasonable factfinder could find aggravating circumstances that would justify imposition of the death penalty; second, he argues that the Georgia Supreme Court failed to apply *Chapman v. California*'s harmless error standard. 386 U.S. 18, 24 (1967). We address these arguments in turn.

Citing the Due Process Clause, *Brady v. Maryland*, 373 U.S. 83 (1963), and the Eighth Amendment prohibition of cruel and unusual punishment, Conklin claims that

2

the prosecutor acted improperly in preventing the opinion of Dr. Saleh Zaki, the state medical examiner, from being presented to the jury and mischaracterizing his opinion in front of the jury. This, Conklin asserts, prevented him from discovering this evidence, even with the exercise of due diligence. Furthermore, Conklin argues that the "evidence as a whole" demonstrates that he is "not guilty" of the underlying capital offense. For this proposition, Conklin cites *Murray v. Carrier*, 477 U.S. 478 (1986).

Furthermore, Conklin claims that the Georgia Supreme Court failed to apply *Chapman*, 386 U.S. 18, 24, in which the Supreme Court held that a court reviewing a federal constitutional error must determine whether the error was harmless beyond a reasonable doubt.

The basis of these new claims is new evidence submitted in the form of Dr. Zaki's 2005 opinion and Dr. Spitz's new opinion (to be contrasted with his earlier "Report"). With regard to his *Chapman* claim, Conklin seems to argue that today's decision by the Supreme Court of Georgia is the new evidence upon which his claim is based. Even assuming this court decision is a new fact,[1] Conklin cannot show that no reasonable factfinder would have found the aggravating circumstances necessary to find him guilty of a crime warranting the death penalty. *See* 28 U.S.C. § 2244(b)(1)(B)(ii).

With respect to Conklin's other claims, he likewise cannot meet the stringent

---

[1]Conklin cites to *Johnson v. United States*, 125 S. Ct. 1571, 1580 (2005), for this proposition. *Johnson* involved a first § 2255 petition. We need not determine here whether a court decision can be a new fact in a case involving a successive habeas petition.

3

requirements of § 2244(b). Conklin has not demonstrated that he could not have discovered this new evidence with the exercise of due diligence. For example, Conklin could have obtained an affidavit for his first habeas petition, or discovered Dr. Zaki's discomfort with the prosecution's characterization of his opinion on cross-examination. Nor has Conklin established that he is factually innocent by clear and convincing evidence. *See* 28 U.S.C. 2244(b)(1)(B(ii); *Murray*, 477 U.S. 478.

We continue to be concerned about the limits placed on defense counsel by the trial judge. It is difficult to justify the trial court's denial of counsel's request for more time, when he was given only thirty-seven days to mount a defense. Further deepening our concern is the trial judge's insistence on denying counsel's motion for modest funds to hire an expert crucial to Conklin's defense. *See Conklin*, 366 F.3d at 1210 ("We are unable to understand why a trial judge would refuse to grant a short continuance and afford a first-degree murder defendant $2,500 of available state funds to hire an expert crucial to his defense."). Despite our misgivings, the limits on our jurisdiction do not permit us to query further. We feel these constraints keenly, and without further guidance from the Supreme Court as to the scope of *Ake v. Oklahoma*, 470 U.S. 68 (1985),[2] we are compelled to this result. Nevertheless, for the foregoing reasons, we deny Conklin's application to file a successive habeas corpus petition.[3]

**APPLICATION DENIED.**

---

[2]In particular, it is unclear whether the Sixth Amendment guarantees a defendant the right to a non-psychiatric expert who is crucial to prove his only defense: self-defense.

[3]Conklin's Motion for a Stay is also denied.

EDMONDSON, Chief Judge, concurs in the result.

BARKETT, Circuit Judge, dissenting:

I cannot concur in the execution of someone whose conviction and sentencing I believe demonstrated a total absence of due process. Robert Conklin was convicted and sentenced to death after being denied any meaningful opportunity to present a defense either to his conviction or to his sentence. As I have noted in my dissent from the denial of Conklin's 28 U.S.C. § 2254 petition for habeas corpus relief, *see Conklin v. Schofield*, 366 F.3d 1191, 1211 (11th Cir. 2004) (Barkett, J., dissenting), no attorney could possibly have provided competent assistance under the onerous conditions demanded by the trial court. When Conklin first sought habeas relief from this Court, the majority conceded that his constitutional rights had been violated, as "the trial court acted unreasonably in denying Conklin the funds necessary to present an effective defense," *Conklin*, 366 F.3d at 1209, but denied relief, explaining that "we cannot say that Conklin's trial, as a whole, was fundamentally unfair and outside of the bounds of the Constitution." *Id.* at 1210. I disagree. Under the circumstances in this case, I am compelled to conclude that Conklin's trial was fundamentally unfair. Because Conklin did not receive a fair trial under our system of justice, he is entitled to a stay of execution and to habeas relief.

Conklin's attorney was given only *thirty-seven days* to prepare an exceedingly complex capital case in which technical medical evidence and detailed expert testimony played a pivotal role. The trial court inexplicably denied repeated requests for more time to prepare for trial, denied Conklin the paltry sum of $500 with which

to hire a medical expert,[4] and refused to give Conklin's attorney additional time to prepare for the sentencing hearing, which followed on the heels of his conviction. The amazing rush to trial and denial of money for a defense expert when the whole case turned on the state's medical expert's testimony cannot possibly be deemed fair process.

Conklin, who was 5'7" and 150 pounds, admitted he killed George Crooks, who was 6'2" and 200 pounds. Conklin's sole defense was that he did not intend to kill Crooks and did so in a struggle to protect himself from being raped. After Conklin killed Crooks, he dismembered the body in an attempt to dispose of it.[5] To prove that Conklin had the requisite intent to support a murder conviction, the state had to establish that some of the knife wounds on Crooks' body had been inflicted before death. The only evidence against Crooks on this question was the testimony of Dr. Saleh Zaki, the state's medical examiner. Although Dr. Zaki conceded on cross-examination that the wounds could have occurred after death, he had testified on direct examination that knife wounds to Crooks' neck were inflicted "antemortem," or before death. Having been denied the funds to hire a medical expert who would have testified affirmatively that the knife wounds occurred post-mortem rather than ante-mortem, thus countering Dr. Zaki's direct testimony with that of another respected expert and amplifying the effect of his concession that the knife wounds

---

[4] In a pre-trial motion, Conklin sought "funds not to exceed $2,500" for expert assistance. A later colloquy between Conklin's counsel and the court reveals that the court also rejected "a certain amount up to $500."

[5] A jury convicted Conklin of murder, and at sentencing recommended the death sentence after finding that the murder was outrageously or wantonly vile, horrible, or inhuman and involved depravity of mind, an aggravating circumstance under Georgia law. Ga. Code Ann. § 17-10-30(b)(7).

could have been inflicted before death, Conklin could only argue Zaki's ambiguity regarding this crucial issue.

Considering the unseemly haste to obtain a conviction in this case, it is not surprising that the state's medical expert at trial, Dr. Zaki, has now come forward with an affidavit[6] saying that in his opinion, "Mr. Conklin did not intentionally set out to kill Mr. Crooks . . . . I saw none of the evidence that I have seen in many other cases in which I testified to indicate that this killing involved planning, intent, torture, or depravity." This testimony, in addition to the affidavit of the independent medical examiner appointed by federal district court, Dr. Werner Spitz, who opines that all of the knife wounds on the body occurred after death, consistent with Conklin's trial testimony,[7] should give any court pause.

Without an independent medical expert to counter Dr. Zaki's direct testimony at trial and focus on his contradictory testimony on cross-examination, and limited by the severe time constraints imposed by the district court, Conklin was unable to subject the prosecution's case to "meaningful adversarial testing," and did not receive a fair trial.[8] *See United States v. Cronic*, 466 U.S. 648, 659 (1984) (describing situations in which defense counsel may be considered *per se* ineffective). Under

---

[6] Filed in conjunction with Conklin's new state habeas petition.

[7] The district court appointed Dr. Spitz in connection with Conklin's habeas proceedings in federal district court. He prepared a report in 1995, after reviewing the autopsy report, photographs, and trial testimony. In May of 2005 he reviewed that information again and opined that "[t]he screwdriver wounds are antemortem (before death) while all of the knife wounds are post-mortem (after death)," and stated that the evidence he reviewed was consistent with a self-defense killing. Dr. Spitz provided an affidavit on July 5, 2005.

[8] Furthermore, although defense witness Chuck Desederio was prepared to testify that the victim had a volatile temper and a tendency for violence, Conklin's attorney failed to elicit this reputation testimony after the court excluded some of Desederio's other testimony.

these circumstances, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance [was] so small that a presumption of prejudice is appropriate . . . ." *Id.* at 659-60.[9]

Furthermore, Conklin was also denied a fair sentencing hearing. Although the majority suggests that Conklin's attorney made a reasonable "tactical" decision not to present any mitigating evidence at the sentencing phase, and that any available testimony would not have been helpful, the trial court's refusal to grant counsel time to prepare for sentencing and refusal to provide funding for a psychiatric expert left Conklin's attorney no reasonable alternatives to choose from. This hardly constitutes strategy. I would grant the request for a stay of execution and habeas relief.

---

[9]Although twenty-five days of trial preparation were found to be sufficient in *Cronic*, the fact that Conklin's counsel had thirty-seven days to prepare does not take this case outside the realm of *per se* ineffectiveness. As I discuss in my previous dissent, *Cronic* requires us to consider "the circumstances surrounding [a defendant's] representation . . . ." *Id.* at 662. It "does not stand for the proposition that twenty-five days or more of preparation may never trigger a presumption of ineffective assistance." *Conklin*, 366 F.3d at 1213 (Barkett, J., dissenting). *Cronic* was not a capital murder case, but a mail fraud case where the "underlying historical facts" were not in dispute and the attorney had only requested thirty days to prepare. Here, the events leading up to the killing were closely disputed, forensic evidence and expert testimony were critical, and the court denied repeated requests for continuances and funding. In short, it is a dramatic misreading of *Cronic* to suggest that the fact that Conklin's counsel had more than twenty-five days to prepare outweighs all of the other circumstances that made effective representation impossible.

9